**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DAVID T. LEIGHTON, Executor of the Estate of Keith R. Leighton, et al.,** | ) CASE NO. 1:16-cv-2898-DAP ) ) |
| **Plaintiffs,** | ) JUDGE DAN AARON POLSTER ) |
| vs. | ) ) **OPINION** |
| **ALEXANDER I. POLTORAK, *et al.*,** | ) ) |
| **Defendants.** | ) |

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer the Case to the Southern District of New York. (**Doc #: 10** ("Motion").) The Court has reviewed the Motion, Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Doc #: 14 ("Resp."), Defendants' Reply Memorandum (Doc #: 17 ("Reply")), and the parties' attachments thereto. For the following reasons, the Court **GRANTS** the Motion in part, and transfers this case to the Southern District of New York.

**I.   Facts**

Plaintiff Keith R. Leighton was an Ohio resident at all times relevant to this case. (Doc #: 1 ("Comp.") ¶ 1.) Because Keith passed away on February 14, 2017, he is now represented by his son, David T. Leighton, the executor of his estate. (Doc ##: 15, 16.) Keith's wife, Lois Leighton, was and is a resident of Ohio. (Comp. ¶ 2.) (The Court will refer to Lois Leighton and Keith Leighton's estate as "Plaintiffs.") Plaintiffs jointly own a majority interest in U.S. Patents Nos. 5,817,207; 6,036,099; 6,214,155; RE 40,145; 6,514,367; 6,557,766, ("the

Leighton Patents") all of which relate to "smart-card" technologies. (Id.) The non-party minority owners of the Leighton Patents also were Ohio residents at all times relevant to this suit. (Resp. 5.)

Defendant General Patent Corporation (formerly General Patent Corporation International) is an intellectual property firm that provides patent licensing assistance, patent enforcement, and other IP-related advisory services (together, "GPC"). (Comp. ¶ 5.) GPC is a New York company with its principal place of business in Suffern, New York. (Id.) Defendant Alexander I. Poltorak is a resident of New York and the founder and Chairman and CEO of GPC. (Id. ¶ 3.) Defendant Paul J. Lerner is a resident of Connecticut and the Senior Vice-President and/or General Counsel for GPC. (Comp. ¶ 4.)

Defendant IP Holdings, LLC, ("IPH") provides IP-related financial and brokerage services, operates an idea incubator, and manages portfolios of early-stage IP-rich companies. (Comp. ¶ 7.) It is a limited liability company with its principal place of business in Suffern, NY. (Id.) Defendant Poltorak is the founder and Managing Director of IPH, and Defendant Lerner is IPH's Senior Vice-President and/or General Counsel. (Comp. ¶¶ 4, 7.)

The Complaint alleges that the Court has personal jurisdiction over Defendants "in that Defendants have engaged in significant dealings in Ohio, including asserting claims in prior litigation." (Id. ¶ 10.) The Complaint alleges that venue is appropriate in the Northern District of Ohio "because a substantial part of the events giving rise to the claims in this action occurred in this judicial district"and "because [Lois] Leighton is in poor health, and is under doctor's orders not to travel." (Id. ¶ 11.)

Defendant GPC has a website that solicits potential customers to send in their patent portfolios and provides a link for a free consultation. (See generally Doc #: 14-3.) GPC markets itself as "the premier patent enforcement and IP management firm in the U.S. (id. at 1), with its principal place of business in Suffern, New York and "offices in Russia, Hungary and Israel." (id. at 5). In fact, GPC has posted on its website a press release touting its success in representing *another* Ohio client, Keithley Instruments, Inc., in patent infringement litigation (Doc #: 14-7.)

In 2002, Plaintiffs visited Defendant GPC's website and contacted GPC regarding potential business. (Doc #: 14-2 ("Leighton Decl.") ¶ 3.) GPC ultimately agreed to accept the Leighton portfolio and entered into agreements with Plaintiffs. (Motion 2.) Over the next ten years, the Leightons and GPC frequently corresponded through email, telephone, and U.S. mail. (Leighton Decl. ¶¶ 5, 10.)

On September 18, 2002, GPC sent a formal Letter of Intent to Mr. Leighton at his Sheffield, Ohio, address, memorializing the parties' intent to create a limited liability company in order to obtain licensing agreements for the Leighton Patents and to enforce those patents. (Doc #: 1-1 ("LOI") at 1.) The LOI provided that Plaintiffs would "assign all right, title, and interest in and to the IP,[1] or an exclusive license thereto to the Company, including the right to sue for and recover damages in respect of past acts of infringement" and that "[t]he Company will be the exclusive vehicle by which the IP is licensed and enforced." (Id. ¶ 1.) The LOI also provided that "[a]ll royalties, income and/or other proceeds, net of legal fees and related disbursements, will be divided equally between [Plaintiffs] and [GPC]," and that the parties "will

---

[1] IP means "intellectual property."

promptly prepare, negotiate and execute definitive agreements . . . , which will be based primarily on the terms described in this Letter and will supersede this Letter." (Id. ¶ 3.) Finally, the LOI provided that the letter or the definitive agreements "will terminate six (6) years from the date that the last of the patents, issued in respect of the IP expires." (Id. ¶ 6.) Thereafter, Leighton Technologies, LLC, ("Leighton Technologies") was "the Company" that was formed to effectuate that purpose. (Comp. ¶ 7.) Plaintiffs were to be paid royalties attributed to the Leighton Patents from Leighton Technologies' bank account in New York. (Motion 3.)

On May 31, 2003, Plaintiffs and Defendants (as well as the minority non-party owners) entered into a Patent Purchase and Sale Agreement. (Doc #: 1-2. ("PPS Agreement")) This agreement provided that it "shall be deemed a contract made under the laws of the State of New York and shall be construed in accordance with and governed by such laws." (Id. ¶ 1.10.16.) The PPS Agreement also required that "all claims and disputes between the parties shall be arbitrated before a panel of three (3) arbitrators in the City of New York pursuant to the commercial rules of the American Arbitration Association then in effect unless both parties agree in writing to another method of settlement." (Id. ¶ 1.10.10.)

On May 31, 2003, the parties also entered an agreement the purpose of which was to govern Leighton Technologies' affairs, entitled the Operating Agreement of Leighton Technologies, LLC. (Doc#: 1-3 ("Operating Agreement").) Pursuant to that agreement, ownership and distribution percentages of Leighton Technologies's revenues were to be apportioned 33% to GPC, 17% to IPH, 49.5625% to Keith and Lois Leighton jointly, and 0.4375% to other minority non-party owners. (Comp. 5; Operating Agreement 18.) The Operating Agreement designated GPC to serve as Manager of Leighton Technologies until

replaced by an elected manager at the annual members meeting. (Comp. ¶ 16; Operating Agreement, Article VII § 7.1(b).) No subsequent election ever occurred, and no annual meeting of the members occurred. (Comp.¶ 16.) Like the PPS Agreement, the Operating Agreement provided that the agreement "and the rights of the parties thereunder shall be governed by and interpreted in accordance with the laws of the State of New York." (Operating Agreement, Article XI, § 11.3.) Similarly, it mandated that "[a]ny dispute, difference or controversy arising under [the] Agreement and involving the payment of money shall be settled by arbitration," and "[a]ny arbitration shall take place in the State of New York, or at such other location as the parties may agree upon." (Id., Article XI § 11.4.)

With regard to the substantive allegations of the Complaint, the Operating Agreement contained a "Duty of Loyalty" provision stating that

> [e]ach Member covenants and agrees that it will not, directly or indirectly, obtain or seek to obtain any commission, fee or other form of compensation from any person for products sold to or services provided to [Leighton Technologies].

(Id., Article VI, § 6.1.) The Complaint asserts, among other things, that Defendants engaged in tortious and fraudulent acts such as self dealing, the redirection of a portion of legal expenses for their own benefit despite employing outside law firms to conduct their business, concealment of patent litigation settlements, and participation in unlawful kickback schemes. (Comp. ¶¶ 18-22.)

On December 1, 2016, Plaintiffs filed the complaint alleging that the corporate and individual Defendants committed the aforesaid unlawful acts. (Id.) On February 20, 2017, Defendants filed the pending Motion asking the Court to dismiss the case for lack of personal jurisdiction and improper venue or, alternatively, to transfer the case to the Southern District of

//

New York for the convenience of the parties and witnesses. The Motion is now ripe for the Court's consideration.

**II.     Personal Jurisdiction**

"The party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction[.]" *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir.1996)). If "a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff[.]" *CompuServe*, 89 F.3d at 1262. "To defeat such a motion, [plaintiffs] need only make a prima facie showing of jurisdiction." *Id.* "A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Conn v. Sakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (quoting *International Techs. Consultants v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause. *Conn*, 667 F.3d at 712 (citations omitted). And, "[u]nlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.* (citations omitted).

### A. Ohio's Long-Arm Statute

Ohio's long-arm statute lists nine scenarios under which Ohio courts can have personal jurisdiction over a defendant. Ohio Rev. Code Ann. § 2307.382(A) (Westlaw through all laws of the 131st General Assembly (2015-2016)). Plaintiffs assert that Defendants' conduct satisfies Sections 1, 2, 3, 4, 6 and possibly 7 of that statute. The Court finds that, at the very least, the long-arm statute confers jurisdiction over Defendants in Ohio under Sections 1 and 4.

Pursuant to Section 1, a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from that person's transacting any business in Ohio. O.R.C. § 2307.382(A)(1). It is disingenuous of Defendants to argue that they never transacted any business in Ohio. Defendants touted themselves, via their internet website, as the premier patent licensing and enforcement firm both nationally and internationally, soliciting business from all 50 states and around the world. It prominently posted its relationship with another Ohio client, Keithley Instruments, Inc. in Solon, Ohio, presumably to attract business in Ohio. It did so successfully when Plaintiffs responded to GPC's website solicitation. The website allowed website visitors to request information and receive a free consultation, and extended an invitation for inventors and patent holders to submit their portfolios to GPC for its consideration of representation. The website offered a free download of GPC's software and advertised open employment positions. GPC's successful effort to solicit business in Ohio is reflected in ample correspondence between the parties, the purpose of which was to negotiate a long-term, lucrative business relationship. (See Doc ##: 14-1 at 1-12.) And it is a relationship that lasted for the better part of ten years during which the parties communicated with each other employing all manner of communication (e.g., mail, email, telephone) (Leighton Decl. ¶¶ 5, 10.) A byproduct

of that relationship involved ongoing payment of royalties to the Ohio Plaintiffs from Leighton Technologies, LLC, a company directed by Defendants and in which the Ohio Plaintiffs and non-party Ohio minority owners were equal members. There can be no doubt that Defendants set in motion an ongoing business relationship with the Ohio Plaintiffs, and that they should have reasonably foreseen that doing business with Ohio Plaintiffs would have consequences in Ohio. *See*, *e.g.*, *Compuserve*, 89 F.3d at 1265 (citing *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 382-83, 385 (6th Cir. 1968) ("Mohasco")). Because the LOI, the PPS Agreement and the Operating Agreement form the basis of Defendants' transactions in Ohio, and because Plaintiffs' claims arise from the obligations and duties set forth in those agreements, the cause of action arises from Defendants' transactions in Ohio. *Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006) (requiring a proximate cause relationship between a plaintiff's claims and defendant's conduct in Ohio). Indeed, as Defendants point out in their motion when advocating personal jurisdiction in New York, it is "the relevant agreements" that form the basis of the alleged claims and those agreements must be governed by New York law. (Motion 10.)

Pursuant to Section 4, a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from that person's causing tortious injury in Ohio by an act or omission outside this state if he regularly does or solicits business in this state, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered in this state. Plaintiffs allege that, not only have the corporate Defendants by their acts in New York caused injury to Plaintiffs in Ohio, but the individual Defendants are alleged to have engaged in fraudulent conduct in New York which also caused Plaintiffs injury in Ohio. Whether Defendants have in fact caused tortious or fraudulent injury to Plaintiffs is not a matter

for the Court's consideration at this time, but the Court concludes that Plaintiffs have provided prima facie evidence showing that the Court has personal jurisdiction over Defendants under Sections 1 and 4 of Ohio's long-arm statute.

### B. Federal Due Process

"There are two kinds of personal jurisdiction within the Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn*, 667 F.3d at 713. However, the Sixth Circuit has concluded that Ohio law does not appear to recognize general jurisdiction over non-resident defendants. *Id*. at 717. That said, a finding of specific jurisdiction comprises three elements, all of which must be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

Id. at 713 (citing *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002), in turn quoting *Mohasco*, 401 F.2d at 381).

A defendant purposefully avails himself of the laws of the forum state "when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)) (internal quotations omitted). A defendant does not need to have a

physical presence in the forum state for personal jurisdiction to attach. *Id.* at 1264. When a defendant's actions are purposefully directed towards residents of the forum state, the defendant can be considered to be transacting business in that state. *Id.* (quoting *Mohasco*, 401 F.2d at 382 (finding mail solicitation, radio broadcasts, and magazine distributions within the forum state amounted to transacting business within the state).

"The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mohasco* factor if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird*, 289 F.3d at 874 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002)) (internal quotations omitted). A website that merely provides information is not interactive and is not a purposeful availment. *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). However, reaching out to customers of the forum state and enabling them to use a defendant's services from the forum state is indicative of an interactive website. *Neogen*, 282 F.3d at 891. Furthermore, if a defendant's website holds itself out as welcoming business from the forum state, that fact supports a finding of purposeful availment. *Id.*

The use of an interactive website is to be considered along with the rest of a defendant's actions, e.g. accepting business from residents of the forum state, in determining purposeful availment. *Id.* ("Most significantly, when potential customers from [the forum state] have contacted [defendant] to purchase its services, [defendant] has welcomed their individual business on a regular basis."). Contracts with residents of the forum state are sufficient to establish personal jurisdiction so long as the totality of that business "represents something more than random, fortuitous, or attenuated contacts with the state." *Id.* (quoting *Burger King*, 471

-10-

U.S. at 475 (1985) (internal quotations omitted)). Even if the residents of the forum state were the ones to approach a defendant for business, mailing to residents of the state or accepting payment from residents of the state is enough to establish personal jurisdiction. *Neogen*, 282 F.3d at 892. Finally, business relationships that are intended to last for multiple years are examples of purposeful availment. *CompuServe*, 89 F.3d at 1265 (finding a business relationship that was intended to be on-going for multiple years, and not a "one-shot affair," to be a purposeful availment).

For specific jurisdiction to attach pursuant to the second *Mohasco* factor, "the cause of action must arise from the defendant's activities" in the forum state. *Mohasco*, 401 F.2d at 381. "To meet this requirement, a plaintiff must establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Opportunity Fund, LLC, v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012) (quoting *Neogen*, 282 F.3d at 892). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds*, 23 F.3d 1116–17).

Finally, the Court must consider whether exercising personal jurisdiction over Defendants would "comport with traditional notions of fair play and substantial justice." *Id*. at 1267–68 (quoting *Reynolds*, 23 F.3d at 1117). If the Court has found that the first two requirements of the *Mohasco* test are met, "an inference arises that this third factor is also present." *Id*. at 1268 (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). When deciding this element of the *Mohasco* test, the Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the

interest of other states in securing the most efficient resolution of controversies." *Id*. (quoting *Am. Greetings*, 839 F.3d at 1169–70).

Defendants repeatedly argue that they never had a physical presence in Ohio, they never owned real estate or had bank accounts in Ohio, and they never substantially travelled to Ohio (Motion 3; Reply 1.) It is true that there is a paucity of tangible, physical evidence in Ohio; however, the Sixth Circuit has observed "the confluence of the increasing nationalization of commerce and modern transportation and communication, and the resulting relaxation of the limits that the Due Process Clause imposes on courts' jurisdiction. *Compuserve*, 89 F.3d at 1262 (citations omitted).

The Court finds that the Due Process clause allows for jurisdiction over GPC under the facts of this case. First, GPC availed itself of the laws of Ohio when its contacts with Ohio proximately resulted from actions *taken by GPC itself* that created a substantial connection with Ohio. GPC's internet website solicited business in Ohio with the specific goal of interacting with Ohio residents, and it did so effectively with Plaintiffs and at least one other Ohio resident, Keithley Instruments, Inc. As previously noted, a defendant does not need to have a physical presence in Ohio for personal jurisdiction to attach. *CompuServe*, 89 F.3d at 1264. The act of reaching out to customers of Ohio and enabling them to use a defendant's services from Ohio is indicative of an interactive website. *Neogen*, 282 F.3d at 891. In sum, GPC purposely availed itself of the laws of Ohio based on its website alone. Technology aside, there is other evidence that GPC purposely availed itself of the laws of Ohio. GPC entered into a multi-year business obligation with Ohio residents through the LOI, the PPS Agreement, and the Operating Agreement. The LOI provided that Leighton Technologies would "be the exclusive vehicle by

which the IP is licensed and enforced," and contemplated a long business relationship that would "terminate six (6) years from the date that the last of the patents, issued in respect of the IP expires." (LOI ¶¶ 1 and 6.) The Operating Agreement provided that the existence of Leighton Technologies would "begin upon the filing of the Articles or Organization with the Department of State *and shall continue until December 31, 2050.*" (Operating Agreement § 1.4 (emphasis added).) This was not a "one-shot affair," per *Compuserve*, 89 F.3d at 1265, but a business relationship that was expected to last for a very long time. Moreover, the claims arise from GPC's business solicitations and agreements with Plaintiffs because those agreements created the obligations that Plaintiffs allege GPC has violated. And, because the first two elements of the *Mohasco* test have been met, there is an inference that GPC has a substantial connection with Ohio. *CompuServe*, 89 F.3d at 1268. Exercising personal jurisdiction over GPC comports with traditional notions of fair play and substantial justice. Though it may be burdensome for GPC to defend a suit in Ohio, when it entered the relevant agreements with Ohio residents it knew that it "was making a connection with Ohio, and presumably [it] hoped that connection would work to [its] benefit." *Id*.

The Court finds that the Due Process clause allows for jurisdiction over Defendant IPH. IPH purposely availed itself of the laws of Ohio by entering the multi-year Operating Agreement with Plaintiffs and other non-party minority owners, all of which were Ohio residents. Second, the claims arise out of that activity because the Operating Agreement is central to this case. Third, because the first two elements of the *Mohasco* test have been met, there is an inference that IPH has a substantial connection with Ohio. *CompuServe*, 89 F.3d at 1268. Exercising personal jurisdiction over IPH comports with traditional notions of fair play and substantial

-13-

justice. Again, though it may be burdensome for IPH to defend a suit in Ohio, when it entered into the Operating Agreement with Ohio residents it knew that it "was making a connection with Ohio, and presumably [it] hoped that connection would work to [its] benefit." *Id*.

While the question of whether the Court has jurisdiction over the business entities to a contract is generally easier to determine, the question whether the Court has personal jurisdiction over the individuals who run those entities, or conduct business on the entities' behalf, is a bit murkier. Here, however, the negotiation of the business agreements with Plaintiffs indicate that Poltorak and Lerner availed themselves of the laws of Ohio; the fraud claims against the individual Defendants arise from their negotiation of those agreements and their obligations under those agreements; and, because the first two *Mohasco* elements have been met, there is an inference that Poltorak and Lerner have a substantial connection with Ohio. *CompuServe*, 89 F.3d at 1268. Exercising personal jurisdiction over Poltorak and Lerner comports with traditional notions of fair play and substantial justice. Though it may be burdensome for them to defend a suit in Ohio, through creating multi-year business obligations with Ohio residents, they knew that they were "making a connection with Ohio, and presumably [they] hoped that connection would work to [their] benefit." *Id*.

Defendants argue that Poltorak and Lerner are protected from personal jurisdiction in Ohio by the "fiduciary shield doctrine." The fiduciary shield doctrine prevents individual officers of a corporation from being subject to personal jurisdiction in the forum state merely because the corporation is subject to such jurisdiction. *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 929 (6th Cir. 1974)). However, the fiduciary shield doctrine is not absolute:

> The mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether [the out-of-state agent] purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

*Balance*, 204 F.3d at 698 (internal citations omitted). When an individual defendant engages in solicitation and negotiations that give rise to a "continuing obligation," that defendant is *not* protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state. *Walker v. Concoby*, 79 F. Supp. 2d 827, 833 (N.D. Ohio 1999). Furthermore, when a plaintiff alleges an individual defendant "was personally involved with the alleged torts, including fraud, in the course of his employment," that defendant is not protected by the fiduciary shield doctrine and is subject to personal jurisdiction in the forum state. *Champion Food Serv., LLC, v. Vista Food Exch.*, No. 1:13-cv-01195, 2013 WL 4046410, at *4 (N.D. Ohio Aug. 7, 2013). Accordingly, neither Defendant is protected by the fiduciary shield doctrine.

## III. Venue

While it is clear that the Court has personal jurisdiction over the Defendants, the question of venue is another matter. Defendants argue that even if the Court has personal jurisdiction over them, venue is not proper in the Northern District of Ohio. The Court agrees.

Under the venue statute, 28 U.S.C. § 1391(b), a civil action may be brought in

    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

    (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

    (3) if there is no judicial district in which an action may otherwise be

> brought as provided in this section, any judicial district to which any defendant is subject to the court's personal jurisdiction with respect to such an action.

28 U.S.C. § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the these three categories. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W.D. of Tex.*, 134 S. Ct. 568, 577 (2013). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* Furthermore, if venue is improper, the court may dismiss the case or transfer it to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a). *See also Commercial Metal Forming v. Utilities Optimization Group, LLC*, No. 4:11-cv-228, 2011 WL 5023265, at *6 (N.D. Ohio Oct. 19, 2011) (quoting *Allied Sound, Inc. v. Dukane Corp.*, 934 F. Supp. 272, 276 (M.D. Tenn. 1996)) (a court has discretion to choose dismissal or transfer under § 1406(a), but transfer "is generally perceived to further the interests of justice more than dismissal.")

None of the Defendants reside in Ohio. And while the Court has personal jurisdiction over the Defendants in Ohio, there is no dispute that this case can be brought in New York, where a substantial part of the events or omissions giving rise to the claims occurred. Though Defendants solicited business from the Leightons in Ohio, Defendants' alleged wrongdoings occurred within New York, primarily through the alleged mismanagement of Leighton Technologies by GPC, Poltorak, and Lerner. Because this case could have been brought in New York, § 3 of the venue statute does not apply.

In their response brief, Plaintiffs basically argue that venue is proper here because the bulk of all relevant documents are stored in Northeast Ohio and Plaintiff Lois Leighton's health prevents her from traveling to New York. These arguments do <u>not</u> address Defendants' venue

argument, which the Court now takes as conceded. Rather, they relate to Defendants' change-of-venue argument analyzed in the next section.

## IV. Change of Venue: Forum Non Conveniens

Even if venue were proper in this district, the Court would still transfer the case to the Southern District of New York under 28 U.S.C. § 1404(a). Under that section,

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

A district court has broad discretion to determine when transfer is appropriate. *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009). In determining whether transfer is appropriate, the court must consider "the convenience of the parties and witnesses, the accessibility of evidence, the availability of process to make reluctant witnesses testify, the costs of obtaining willing witnesses, the practical problems of trying the case most expeditiously and inexpensively and the interests of justice." *Id*. (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, (1988); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136–37 (6th Cir.1991) (internal quotation marks omitted). Generally, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (quoting *Reese*, 574 F.3d at 320).

Courts weigh the convenience of both districts by balancing the private interest of the parties and the public interest in fair and efficient administration of justice. *In re Volkswagen AG*, 371 F.3d 201, 203 (6th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof, (2) the availability of compulsory process to secure witness

-17-

attendance, (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors include (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized disputes decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflict of laws. *Id.*

This case involves the inducement to contract with Defendants and the operation and alleged mismanagement of Leighton Technologies by GPC and its directors. Plaintiffs assert the following laundry-list of claims:

> Breach of Fiduciary Duty, Failure of Duty to Disclose, Fraudulent Inducement, Fraudulent Concealment, Self-Dealing, Breach of the Covenant of Good Faith and Fair Dealing, Interference with Prospective Business Opportunity, Faithless Servant and Disloyalty, Failure to Provide Full Accounting, Engaging in Prohibited Transactions, Legal Malpractice, Spoliation of Evidence, Punitive Damages, Injunctive and other Equitable Relief.

(Comp. 6.) All of these claims appear to arise from the Operating Agreement of Leighton Technologies, LLC, a New York entity, and its mismanagement by GPC and its directors, all New York actors. (See, e.g., Operating Agreement, Article IV (Duty of Loyalty), Article V, Section 7.2 (Management Authority and Duties), Article V, Section 7.4 (Restrictions on Authority of the Managers: Certain Major Decisions).) The parties dispute whether all the relevant documents regarding this case are in New York. (Reply 15.) Mrs. Leighton and any non-party minority owners that may testify are the only possible witnesses in Ohio; the majority of the witnesses are located in New York. *Id.*

More importantly, the parties agreed at the outset of their relationship that their rights under the agreements would be governed by, and interpreted in accordance with, the laws of New York. Although this Court is capable of interpreting New York law, it certainly does not

-18-

have the familiarity with New York law that the Southern District of New York has. The parties also agreed that any dispute, difference or controversy arising from the agreement would be settled by arbitration in New York, unless the parties agreed otherwise. Although neither party is asking the Court to enforce the arbitration clause, it is clear that the parties contemplated that any disputes arising from the various agreements would be resolved, one way or another, in New York.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause[,]" except under extraordinary circumstances. *Atl. Marine Constr.*, 134 S.Ct. at 581. "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id*. First, a plaintiff's choice of forum is irrelevant, and if the plaintiff wants to disregard the forum-selection clause he bears the burden of establishing the clause is unwarranted. *Id*. Second, a court should not consider the parties' private interests, and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules[.]" *Id*.

The Court concludes that venue of this case should be transferred to the Southern District of New York, where the defendants are located, where much of the evidence is located, where the court is more familiar with the governing law, and where the parties expressly contemplated resolving future disputes many years ago. Unfortunately, Mrs. Leighton is in poor health and is restricted by doctor's orders from traveling to New York. However, her deposition may be

taken in Ohio, and arrangements can be made for her to participate in any New York court hearing or arbitration via video conference.

**V.     Conclusion**

In sum, while the Court finds that it has personal jurisdiction over the New York Defendants, the Court also finds that venue is improper in this district. Even if the Court found that venue was proper here, it would transfer the case to the Southern District of New York for the convenience of the parties and the witness–a district the parties agreed 15 years ago would be the forum for resolving future disputes. Consequently, the Motion (**Doc #: 10**) is **granted in part**.

**IT IS SO ORDERED.**

 **/s/ Dan A. Polster     April 19, 2017**
**Dan Aaron Polster**
**United States District Judge**